1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7                                              Case No.  23-cv-04020-TLT

8    FORREST KENDRID,

9                    Plaintiff,                **ORDER OF SERVICE, DENYING
                                               MOTION FOR TEMPORARY
                                               RESTRAINING ORDER,**
10            v.                               **DENYING APPOINTMENT OF
                                               COUNSEL, DENYING MOTION TO**
11   EKANEM, et al.,                           **STRIKE**

12                  Defendants.                Re: Dkt. No. 12, 19

13

14          This is a *pro se* civil detainee's civil rights action, filed on August 27, 2023, in the Central

15   District of California and subsequently transferred to this district.  Plaintiff is in state custody at

16   Salinas Valley State Prison (SVSP).  He is paralyzed from the waist down, and brings claims

17   against a correctional officer, psychologist, and three nurses at SVSP for using harassing language

18   and leading him to engage in self-harming behavior and failing to provide him adequate medical

19   and nursing care.  The complaint is now before the Court for screening under 28 U.S.C. §

20   1915(e)(2)(B).  For the reasons set forth below, the Court finds that the complaint states

21   cognizable claims under the Eighth Amendment, and orders service on defendants.

22          Plaintiff filed a motion for a temporary restraining order (TRO) on September 21, 2023.

23   ECF 12.  The Court ordered defendants to respond.  Defendants filed an opposition, ECF 14, and

24   plaintiff filed a reply, ECF 15, and additional documents in support of his request for a TRO.  ECF

25   17, 18.  For the reasons identified below, the Court denies the TRO.

26          Plaintiff has also requested counsel as an accommodation for his disability.  ECF 16.  For

27   the reasons identified below, the Court denies plaintiff's request for appointment of counsel.

28          Defendants have filed a motion to strike plaintiff's supplemental declarations in support of

his TRO motion.  ECF 19.  For the reasons identified below, the Court denies the motion.

### A.    Screening Plaintiff's Complaint

#### 1.    Background

Plaintiff alleges that defendants began violating his constitutional rights after he made a Prison Rape Elimination Act (PREA) complaint about defendant nurse Inneh after she made sexual statements on April 1, 2023, causing him to fear for his safety.  ECF 1 at 5.  Defendant Inneh "became threaten[ed] and trigger[ed] plaintiff mental psychosis where he engaged in self-injurious behavior, biting his arm open causing blood to run down his arm."  *Id.*  Plaintiff was already on suicide watch.  A certified nurse assistant (CNA) activated her alarm, and a correctional officer came to intervene.  Defendant Inneh "inform custody officer not to worry about plaintiff" and that she had medically cleared him.  *Id.*  The officer and defendant Inneh left plaintiff bleeding.  *Id.*  Defendant Inneh then told plaintiff to kill himself.  *Id.*  Plaintiff bit deeper into his arm and tied his t-shirt around his neck.  The CNA pressed the alarm again and custody officers returned.  Defendant Inneh contacted the psychiatrist and ordered psychotropic emergency injections to de-escalate plaintiff's psychotic behavior.

Two hours after he received the injection, plaintiff requested a shower and assistance changing his diaper.  Defendant Inneh denied his request "stating fuck him, he file[d] sexual harassment against me."  Plaintiff slept in his feces until the next day.  Defendant Ekanem told plaintiff to withdraw his complaint against defendant Inneh "because we are all African, all blacks should stick together."  *Id.*  Plaintiff told defendant Ekanem it wasn't about race; it was about defendant Inneh's comments that made him feel unsafe.  *Id.* at 5-6.  Defendant Ekanem then called plaintiff a fag and told him to watch his back.  *Id.* at 6.

Plaintiff reported defendant Ekanem to defendant supervising nurse Salazar.  *Id.*  Defendant Salazar told plaintiff, "You made your bed now lay in it; you're not at (ASH) Atascadero State Hospital anymore this is prison we will not cater to you, I care less that you were found not guilty by reason of insanity, you won't get special treatment here."  *Id.*  Plaintiff told defendant Salazar he wasn't asking for special treatment, just not to be sexually harassed, denied showers, and retaliated against.  *Id.*  Defendant Salazar told him "You fuck with one you fuck with

2

United States District Court
Northern District of California

1   us all.  Drop the complaint and you be ok." *Id.*  Plaintiff told defendant Salazar he would protest

2   with a hunger strike and file grievances.  Defendant Salazar yelled at plaintiff and told him she

3   would inform all the hospital staff that he was on the shit list.

4           Defendant Salazar and defendant correctional officer V. Garcia conspired to deny plaintiff

5   the tools to redress the violation of his constitutional rights and discriminated against him based on

6   his mental and physical disabilities and protest and grievances.  They delayed and denied adequate

7   medical care.  They instructed medical and custody not to respond to plaintiff's call light or help

8   him with diaper changes, transferring in and out of bed, showering mental health care, and medical

9   medication for pain, seizures, and high blood pressure.  *Id.* at 7.  They denied him a confidential

10  phone call about his grievances on June 12, 2023.  *Id.*  The call was forfeited because plaintiff was

11  waiting for assistance changing his diaper and then the time limit was up.

12          On June 12, 2023, defendant psychologist Callis told plaintiff if he kept filing reports on

13  defendants Inneh and Garcia he would continue to receive psychotropic injections "until he gets

14  his shit together," and that custody, medical, and mental health have been a united front for years

15  and defendant Callis would not let plaintiff break that up.

16          Around July 16, 2023, defendant Ekanem told defendant Callis to order some shots for

17  plaintiff because plaintiff was asking to speak to supervisors and had not withdrawn his complaint

18  and was requesting a diaper change.  Defendant Callis said he would talk to defendant Inneh about

19  the sexual allegations and left to go do so.  Defendant Ekanem started calling plaintiff names and

20  said he smelled like he had shit himself.  *Id.* at 7-8.  This triggered plaintiff's psychosis and he bit

21  his arm open and began banging his head on the door.  Defendant Ekanem yelled "this dummie

22  Kendrid is hurting himself shoot his ass up."  Defendant Callis returned and stated, "they are still

23  investigating Inneh don't change his diaper, I'll have custody restrain him and you can give him

24  the injection . . . he can sit in it all night."  Plaintiff was restrained and injected and left in his feces

25  until the next shift.

26          Plaintiff alleges that defendants' conduct violated his First and Eighth Amendment rights.

27  *Id.* at 9, 10.  He seeks a declaratory judgment and compensatory and punitive damages.  *Id.* at 11.

28

United States District Court
Northern District of California

1

2          **2.    Standard of Review**

3          Although plaintiff is a civil detainee rather than a prisoner, he is proceeding *in forma*

4   *pauperis* (*see* ECF 11) and his complaint is therefore subject to screening under 28 U.S.C. §

5   1915(e)(2)(B).  Under § 1915(e)(2)(B), the court must dismiss a complaint or portion thereof if the

6   prisoner has raised claims that are legally "frivolous or malicious," "fail[ ] to state a claim upon

7   which relief may be granted," or "seek[ ] monetary relief from a defendant who is immune from

8   such relief."  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

9   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Martin v. Sias*, 88 F.3d 774. 775 (9th Cir. 1996).

10  *Pro se* pleadings must, however, be liberally construed.  *See United States v. Qazi*, 975 F.3d 989,

11  993 (9th Cir. 2020).

12         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

13  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not

14  necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the

15  grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

16  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

17  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

18  do. . .. Factual allegations must be enough to raise a right to relief above the speculative level."

19  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must

20  proffer "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  All or part

21  of a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an

22  arguable basis in either law or in fact.

23         To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1)

24  that a right secured by the Constitution or laws of the United States was violated, and (2) that the

25  alleged violation was committed by a person acting under the color of state law.  *See West v.*

26  *Atkins*, 487 U.S. 42, 48 (1988).

27         If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to

28  amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to

1    amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

2    to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by

3    virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG*

4    *Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

5                      **3.        Analysis**

6            The Due Process Clause of the Fourteenth Amendment prohibits subjecting civil detainees

7    to conditions that amount to punishment.  *See generally Jones v. Blanas*, 393 F.3d 918, 931-32

8    (2004).

9            Constitutionally adequate medical care for civil detainees must meet a "reasonable

10   professional" standard.  *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (quoting

11   *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).  "The *Youngberg* standard differs from the

12   'deliberate indifference' standard used in Eighth Amendment cruel and unusual punishment cases,

13   in that [p]ersons who have been involuntarily committed are entitled to more considerate treatment

14   and conditions of confinement than criminals whose conditions of confinement are designed to

15   punish."  *Id.* (quotation marks omitted).  Liberally construed, plaintiff has stated a cognizable

16   Fourteenth Amendment claim against defendants Inneh, Ekanem, Salazar, Garcia, and Callis for

17   failing to promptly address his urgent medical, mental health, and hygiene needs and for using

18   abusive language towards him while he was in a state of mental health crisis or psychosis.

19           "Within the [detention] context, a viable claim of First Amendment retaliation entails five

20   basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

21   because of (3) that [inmate's] protected conduct, and that such action (4) chilled the inmate's

22   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

23   correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

24           Plaintiff alleges that each of the five defendants took adverse actions against him and

25   explicitly informed him that it was because of his exercise of protected conduct in the form of

26   making complaints.  The adverse actions that he alleges, refusing to allow him to shower or to

27   change his diaper or provide needed medication, would not have reasonably advanced legitimate

28   correctional goals.  He has therefore stated a First Amendment claim against the defendants.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.**     **Plaintiff's TRO Motion**

     **1.**     **Background**

Plaintiff seeks a TRO requiring defendants, as well as their successors in office, agents, employees, and other persons acting in concert and participation with them "to provide a safe and non-retaliatory setting for plaintiff while litigating this civil case." ECF 12 at 1. He also asks the Court to require defendants to "follow their own California Code of Regulations Title 15 . . . section 3999.226(e)" prohibiting reprisal against a grievant for filing a health care grievance, and "section 3401.6(e) protective measures, which state multiple protection measures may be considered to protect inmate victims who report staff sexual harassment" including housing changes or transfers, removal of alleged staff from contact with victims, and emotional support services for inmates or staff. *Id.* at 1-2. He also asks the Court require defendants to follow section (d) prohibiting retaliation against inmates/parolees who report incidents of staff sexual harassment. *Id.* at 2.

Plaintiff declares that he was "sexually harassed, retaliated against and triggered by defendants to self-mutilate myself and deny medical care." *Id.* On September 7, 2023, he spat on defendant Ekanem, who was trying to enter his cell, out of fear and months of abuse and threats. He states, "Plaintiff me Kendrid made the threat and follow through." *Id.* Subsequently, defendants Salazar and Garcia told plaintiff that he would be beaten and pepper sprayed during the next altercation. On September 18, 2023, defendant Ekanem came into plaintiff's cell again, and plaintiff was in a "state of shock" because "defendants did not follow protocol." *Id.* at 2-3. Plaintiff argues that "the warden is supposed to separate plaintiff [from] defendant for the safety of both individuals." *Id.* at 4. Plaintiff says despite his threats to all five defendants, it was determined there was no threat, but ordered that a spit mask be placed on plaintiff and defendants were instructed to use force on him if he assaulted them again. *Id.* Plaintiff was charged with assault and battery.

Plaintiff states his life is in danger and he is unsafe and suffering continuous threats and retaliation, and defendants are trying to discourage him from continuing litigating his civil suit.

*Id.* He states he is threatened with irreparable harm and has been denied care for a serious medical issue. *Id.* at 6. He believes there is a liability issue for the California Department of Corrections and Rehabilitation (CDCR) because he has made threats against the defendants but CDCR has not separated them from him for their safety. Defendants have "gone through great length to continue to discourage plaintiff from litigating this civil suit." *Id.* at 7. He cannot defend himself because he is unable to move his legs and he lives in constant fear. *Id.* He will suffer irreparable harm in the form of ongoing violation of his constitutional rights. *Id.* He suggests defendants have provided unconstitutional medical treatment and stopped treatment once prescribed. *Id.* at 8.

Defendants respond that plaintiff, who has been moved multiple times from Department of State Hospitals to CDCR custody pursuant to California Welfare and Institutions Code section 7301, has received more than 100 Rules Violations Reports (RVRs) since 2016. ECF 14 at 2. Plaintiff has been found guilty by correctional staff of numerous threats and assaults on staff. *Id.*; ECF 14-1 at 33 (RVR finding plaintiff guilty of exposing himself to female CNA); 65 (RVR finding plaintiff guilty of threatening to kill CNA); 102 (RVR finding plaintiff guilty of yelling racial slurs and threats of sexual violence at a female nurse); 119 (RVR finding plaintiff guilty of battery against a correctional officer with a deadly weapon).

Defendants attach documentation of the RVR plaintiff received for the September 7, 2023 incident in which he spat on defendant Ekanem. ECF 14-1 at 137. Defendant Ekanem stated that she knocked on plaintiff's door to offer him an assessment. He replied that he wanted one, but "[w]ith his eyes bulged, swinging his head side to side in anger." *Id.* She believed she was not safe, informed her supervisor, and entered plaintiff's cell with officers. He immediately spat on her face and chest area. Defendant Ekanem states that plaintiff had been "threatening the entire [correctional treatment center] staff especially the black, (Nigeria) Nurses" and had stated multiple times his intent to kill and strangle defendant Ekanem, defendant Inneh, and another nurse named Chukwuneta. *Id.*

Defendants also attach excerpts from plaintiff's medical records documenting that he told defendant Ekanem on September 18 to get a lawyer because CDCR was "not protecting you nurses from danger," and was retaliating against her as a victim, and stated that he had assaulted

her and "I am mentally unstable, and I can do it again." ECF 14-1 at 147. Plaintiff's records show he refused his meals on September 18. *Id.* The records also show that the deputy warden, nursing staff, and correctional staff agreed on September 15 on a strategy for plaintiff where one officer would place a hand on his wrist/cuff to prevent him from hitting nursing staff, and another would place a hand on his shoulder to prevent him from head butting. *Id.* Defendant Ekanem's notes indicate "this did not happen" during the September 18 encounter. *Id.*

Plaintiff's reply states that defendants have delayed and denied his medical care and threatened, beat, and sexually harassed him. ECF 15 at 1. He says he may die from his serious medical issues if the Court does not intervene. *Id.* at 1-2. He alleges that defendants are using cell extractions as a means of excessive force to intimidate him. *Id.* at 4. Plaintiff attaches approximately 70 pages of grievance history.

Plaintiff also filed two additional declarations in support of his TRO motion. In the first, dated October 17, 2023, plaintiff states that on September 25 he told defendant Salazar that he was having chest pain and seizure activity due to his hunger strike and refusing seizure medication, he had an abnormal EKG result, and defendant Salazar refused to take the result to a doctor and left plaintiff unattended, after which he went in and out of consciousness and woke up on the floor. ECF 18 at 1. Dr. Ahmed sent plaintiff to the hospital, where he was administered seizure medication. *Id.* at 1-2. On September 27, defendant Salazar refused to comply with Dr. Ahmed's orders to replace plaintiff's wheelchair unless plaintiff agreed to withdraw his complaint against defendant Salzar. *Id.* at 2. On September 29, defendant Garcia threatened plaintiff at breakfast and told him a restraining order would not work. *Id.*

Plaintiff believes defendants "are waiting for the decisions from the court for a[n] answer to restraining order before the[y] apply physical harm." *Id.* Plaintiff has been anxious and engaging in self-harm, and a psychiatrist has informed him he will implement a forced medical order for psychotropic medication, which will enable defendants to extract plaintiff from his cell anytime he is unstable or in a state of psychosis. *Id.*

In plaintiff's second declaration, dated October 24, he states that that he is in immediate danger because on that date defendant Salazar ordered RN Wand to be plaintiff's nurse after

plaintiff had an altercation with RN Wand that resulted in an assault and battery charge against plaintiff.  ECF 17 at 1.  Plaintiff asked RN Wand if Investigative Services Unit (ISU) had told them to stay away from plaintiff, but RN Wand laughed and said, "things change since you filed a lawsuit against employees at SVSP and if you refused to be treated by me you refused medical care," and then left the area.  *Id.* at 1-2.  Custody came and cuffed plaintiff in waist chains and RN Wand came rushing in.  *Id.* at 2.  Plaintiff felt threatened and hit RN Wand in the face with the waist chain.  *Id.*

Defendants have responded to plaintiff's additional declarations with plaintiff's medical notes from September 25, showing that the alarm was activated for chest pain and that Nurse Karungi notified doctors Singh and Bright about plaintiff's EKG results, several hours after which plaintiff fell and was attended to by Dr. Ahmed and then the ambulance paramedics.  ECF 19-1 at 4, 5.  Defendants also submitted a declaration by defendant Salazar that defendant Salazar was not involved in the September 25 incident.  ECF 19-1 at 1-2.

### 2.    Legal Standard

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application.  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).  A temporary restraining order is an "extraordinary remedy" that a court should award only when a plaintiff makes a clear showing that he is entitled to such relief.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The substantive standards for a temporary restraining order are the same as those for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest.  *See Winter*, 555 U.S. at 20.  The irreparable injury must be both likely and immediate.  *See id*. at 22; *see also Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive

United States District Court
Northern District of California

relief.").

### 3.  Analysis

Plaintiff has not met the standard for a TRO.  He has not shown that irreparable harm is likely to occur if the TRO is not granted, or that the balance of equities tips in his favor, or that a TRO would serve the public interest.  His request for relief is vague.  He states that his life is in danger, but his allegations as to how or why are vague and do not uphold the claim.  He has not explained specifically what medical care is being withheld from him, or what treatment was stopped, and how it will cause him injury.  His allegation about defendant Salazar refusing to send his EKG results to a doctor is not credible in light of the materials submitted by defendants. Plaintiff has otherwise not explained the specific content of defendants' threats.  For example, defendant Garcia telling plaintiff that his restraining order will not work, without more, is not a specific threat to harm plaintiff.  Plaintiff has detailed at length his own threats toward defendants, which are not a basis for his claim of irreparable harm.  Plaintiff's description of events, and the documentation he has attached, demonstrate that plaintiff is receiving at least some treatment for his psychosis, *see* ECF 15 at 15, and that custody staff and his mental health providers are attempting to prevent him from engaging in self-harm, including through the use of involuntary psychotropic medication and cell extractions if necessary.  Defendants may be constitutionally obligated to take such measures to attempt to prevent plaintiff from harming himself to meet the *Youngberg* professional judgment standard.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 852 n.12 (1998) ("The combination of a patient's involuntary commitment and his total dependence on his custodians obliges the government to take thought and make reasonable provision for the patient's welfare.").

Plaintiff describes the relief he seeks as "to provide a safe non retaliatory setting for plaintiff while litigating this civil case," ECF 12 at 1, to consider protection measures including but not limited to "housing changes or transfers for inmate victims, removal of alleged staff from contact with victims, and emotional support services," *id.* at 1-2, "to stop the intimidation against plaintiff," *id.* at 2, and "to stop retaliatory action and to separate plaintiff from defendants," *id.* at 4.  These requests are not specific.  Plaintiff has not sufficiently alleged that retaliation is

1   happening for the Court to order that it stop.  It is also not clear that the defendants in this case

2   could provide the relief plaintiff seeks.  Even assuming the Court has jurisdiction over defendants,

3   it does not have jurisdiction over nondefendants.  The Court's jurisdiction is limited to the parties

4   in this action and to the viable legal claims upon which this action is proceeding.  *Summers v.*

5   *Earth Island Institute*, 555 U.S. 488, 491–93 (2009); *Mayfield v. United States*, 599 F.3d 964, 969

6   (9th Cir. 2010).  Defendants include one correctional officer and medical staff, who are not

7   authorized, for example, to order housing changes or transfer plaintiff to another facility.

8        It is apparent from the materials submitted regarding the TRO motion, including plaintiff's

9   own description of his own conduct, that defendants face challenges caring for plaintiff.  While

10  plaintiff will have an opportunity to litigate his case and the Court will more fully explore the truth

11  of the very serious allegations in the complaint during the future stages of the case, the Court will

12  not order the extraordinary remedy of a TRO that would greatly restrict defendants' ability to

13  manage plaintiff's physical and mental health in the meantime.

14      **C.      Plaintiff's Request for Counsel**

15       Plaintiff's request for appointment of counsel (ECF 16) is denied.  "Generally, a person

16  has no right to counsel in civil actions."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

17  "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil

18  litigants pursuant to 28 U.S.C. § 1915(e)(1)."  *Id.* (citing *Agyeman v. Corrs. Corp. of Am.*, 390

19  F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v. Agyeman*, 545 U.S. 1128

20  (2005)).  A finding of "exceptional circumstances" requires an evaluation of the likelihood of the

21  plaintiff's success on the merits and of the plaintiff's ability to articulate his claims *pro se* in light

22  of the complexity of the legal issues involved.  *See Agyeman*, 390 F.3d at 1103.  Both factors must

23  be viewed together before reaching a decision on a request for counsel under § 1915.  *See id.*

24       At this stage, the likelihood of plaintiff's success on the merits is low, and the legal issues

25  are not unduly complex.[1]  Plaintiff's motion is DENIED without prejudice to the Court's *sua*

26  *sponte* appointment of counsel at a future date should the circumstances of this case warrant such

27

28  _____
    [1] The federal courts are not subject to the Americans with Disabilities Act.

United States District Court
Northern District of California

1    appointment.

2          **D.    Defendants' Motion to Strike**

3          Defendants have asked the Court to strike plaintiff's additional declarations in support of

4    his TRO motion (ECF 17 and 18) as containing improper post-briefing evidence.  Because the

5    Court denies plaintiff's TRO motion while addressing plaintiff's supplemental declarations, it

6    denies the motion to strike as moot.

7                                    **CONCLUSION**

8          1.    Plaintiff's TRO motion (ECF 12) is DENIED.

9          2.    Plaintiff's request for appointment of counsel (ECF 16) is DENIED.

10         3.    Defendants' motion to strike plaintiff's declarations (ECF 19) is DENIED.

11         4.    Plaintiff has stated a cognizable Fourteenth Amendment and First Amendment

12   claim against defendants.

13         5.    The Court ORDERS that service on the following defendants shall proceed under

14   the California Department of Corrections and Rehabilitation's ("CDCR") e-service

15   program for civil rights cases from prisoners in the CDCR's custody:

16              a.    Nurse Inneh

17              b.    Nurse Ekanem

18              c.    Correctional Officer Garcia

19              d.    Supervising Nurse Salazar

20              e.    Psychologist Callis

21         In accordance with the program, the Clerk is directed to serve on the CDCR via email the

22   following documents: the operative complaint (ECF. No. 1), this Order of Service, a CDCR

23   Report of E-Service Waiver form, and a summons.  The Clerk also shall serve a copy of this order

24   on the plaintiff.

25         No later than 40 days after service of this order via email on the CDCR, the CDCR shall

26   provide the court a completed CDCR Report of E-Service Waiver advising the court which

27   defendant(s) listed in this order will be waiving service of process without the need for service by

28   the United States Marshal Service ("USMS") and which defendant(s) decline to waive service or

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1  could not be reached.  The CDCR also shall provide a copy of the CDCR Report of E-Service

2  Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court

3  a waiver of service of process for the defendant(s) who are waiving service.

4         Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each

5  defendant who has not waived service according to the CDCR Report of E-Service Waiver a

6  USM-285 Form.  The Clerk shall provide to the USMS the completed USM-285 forms and copies

7  of this order, the summons, and the operative complaint for service upon each defendant who has

8  not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-

9  Service Waiver.

10        6.     Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure

11  requires defendants to cooperate in saving unnecessary costs of service of the summons and

12  complaint.  If service is waived, this action will proceed as if defendants had been served on the

13  date that the waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), defendants will not be

14  required to serve and file an answer before **sixty (60) days** from the date on which the CDCR

15  provides a copy of the CDCR Report of E-Service Waiver to the California Attorney General's

16  Office.  (This allows a longer time to respond than would be required if formal service of

17  summons is necessary.)  If defendants have not waived service and have instead been served by

18  the USMS, then defendants shall serve and file an answer within **twenty-one (21) days** after being

19  served with the summons and complaint.

20        7.     Defendants shall answer the complaint in accordance with the Federal Rules of Civil

21  Procedure.  The following briefing schedule shall govern dispositive motions in this action:

22           a.     No later than **sixty (60) days** from the date their answer is due, defendants

23  shall file a motion for summary judgment or other dispositive motion. The motion must be

24  supported by adequate factual documentation, must conform in all respects to Federal Rule of

25  Civil Procedure 56, and must include as exhibits all records and incident reports stemming from

26  the events at issue.  A motion for summary judgment also must be accompanied by a *Rand*[2] notice

27

28    [2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

so that plaintiff will have fair, timely, and adequate notice of what is required of him in order to

oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out

in Rand must be served concurrently with motion for summary judgment).  A motion to dismiss

for failure to exhaust available administrative remedies must be accompanied by a similar notice.

However, the Court notes that under the law of the circuit, in the rare event that a failure to

exhaust is clear on the face of the complaint, defendants may move for dismissal under Rule

12(b)(6), as opposed to the previous practice of moving under an unenumerated Rule 12(b)

motion.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v.*

*Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available

administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"),

should be raised by a defendant as an unenumerated Rule 12(b) motion).  Otherwise, if a failure to

exhaust is not clear on the face of the complaint, defendants must produce evidence proving

failure to exhaust in a motion for summary judgment under Rule 56.  *Id.*  If undisputed evidence

viewed in the light most favorable to plaintiff shows a failure to exhaust, defendants are entitled to

summary judgment under Rule 56.  *Id.*  But if material facts are disputed, summary judgment

should be denied and the district judge, rather than a jury, should determine the facts in a

preliminary proceeding.  *Id.* at 1168.

       If defendants are of the opinion that this case cannot be resolved by summary judgment,

they shall so inform the Court prior to the date the summary judgment motion is due. All papers

filed with the Court shall be promptly served on plaintiff.

            b.    Plaintiff's opposition to the dispositive motion shall be filed with the Court

and served on defendants no later than **twenty-eight (28) days** after the date on which

defendants' motion is filed.

            c.    Plaintiff is advised that a motion for summary judgment under Rule 56 of

the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you

must do to oppose a motion for summary judgment.  Generally, summary judgment must be

granted when there is no genuine issue of material fact—that is, if there is no real dispute about

any fact that would affect the result of your case, the party who asked for summary judgment is

United States District Court
Northern District of California

entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is supported properly by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that—in the rare event that defendants argue that the failure to exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice.  To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court.  Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents— documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein.  As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case.  *Albino*, 747 F.3d at 1168.

(The notices above do not excuse defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment.  *Woods*, 684 F.3d at 935.)

d.      Defendants shall file a reply brief no later than **fourteen (14) days** after the date plaintiff's opposition is filed.

15

e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

8.      Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure.  Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to defendants to depose plaintiff and any other necessary witnesses confined in prison.

9.      All communications by plaintiff with the Court must be served on defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

10.     It is plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address.  *See* L.R. 3-11(a).  The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address.  *See* L.R. 3-11(b).

11.     Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

12.     This Order terminates Docket Nos. 12 and 19.

**IT IS SO ORDERED.**

Dated: November 29, 2023

_____
TRINA L. THOMPSON
United States District Judge